IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| TAWANNA J. BUNDY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 1:17-CV-829-WKW |
| | ) | [WO] |
| METHODIST HOME FOR THE AGING, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM OPINION AND ORDER**

This is an employment discrimination and retaliation case under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*, and the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.* Plaintiff Tawanna J. Bundy,[1] a laundry worker suffering from knee problems, sued Defendant Methodist Home for the Aging[2] after she was fired, purportedly because she was physically unable to do all the tasks her job required. Plaintiff says she offered a reasonable accommodation by asking Defendant to give her an electric cart to carry loads of laundry, but

---

[1] The complaint spells Ms. Bundy's first name as "Tawana," but other documents in the record, including Ms. Bundy's own signature, indicate that it should be spelled "Tawanna." (*See* Doc. # 18-3.) The Clerk of the Court is DIRECTED to update the docket to reflect Plaintiff's correct name.

[2] The complaint incorrectly names Defendant as "Methodist Homes of Alabama & Northwest Florida." (Doc. # 16, at 1.) The Clerk of the Court is DIRECTED to update the docket to reflect Defendant's correct name.

Defendant refused.  Plaintiff filed suit, claiming that Defendant should have made that accommodation and fired her in retaliation for requesting it.

Before the court is Defendant's motion for summary judgment.  (Doc. # 16.) Defendant argues that because Plaintiff was not able to fulfill all the essential functions of the laundry worker job even with the help of an electric cart, she was not a "qualified individual" within the meaning of the ADA and the Rehabilitation Act.  It contends that Plaintiff's retaliation claims fail as a matter of law, too.  For the reasons below, Defendant is correct and is entitled to summary judgment.

## I.  JURISDICTION AND VENUE

Because this case arises under two federal statutes, subject-matter jurisdiction is proper under 28 U.S.C. § 1331 (federal question).  The parties do not contest personal jurisdiction or venue.

## II.  STANDARD OF REVIEW

To succeed on a motion for summary judgment, the moving party must demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The court views the evidence, and all reasonable inferences drawn therefrom, in the light most favorable to the nonmoving party.  *Jean-Baptiste v. Gutierrez*, 627 F.3d 816, 820 (11th Cir. 2010).

The party moving for summary judgment "always bears the initial

responsibility of informing the district court of the basis for the motion." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). This responsibility includes identifying the portions of the record illustrating the absence of a genuine dispute of material fact. *Id.* Alternatively, a movant who does not have a trial burden of production can assert, without citing the record, that the nonmoving party "cannot produce admissible evidence to support" a material fact. Fed. R. Civ. P. 56(c)(1)(B); *see also* Fed. R. Civ. P. 56 advisory committee's note ("Subdivision (c)(1)(B) recognizes that a party need not always point to specific record materials. . . . [A] party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact.").

If the movant meets its burden, the burden shifts to the nonmoving party to establish—with evidence beyond the pleadings—that a genuine dispute material to each of its claims for relief exists. *Celotex Corp.*, 477 U.S. at 324. A genuine dispute of material fact exists when the nonmoving party produces evidence allowing a reasonable fact finder to return a verdict in its favor. *Waddell v. Valley Forge Dental Assocs.*, 276 F.3d 1275, 1279 (11th Cir. 2001).

### III. BACKGROUND

Plaintiff Tawanna J. Bundy was a laundry worker at Wesley Place on Honeysuckle, a nursing home operated by Defendant Methodist Home for the

3

Aging.[3] Plaintiff began working there in 1996 as a housekeeper but was reassigned as a laundry worker following an on-the-job knee injury in 2001. (Doc. # 18-4, at 4, 6–7.) That injury required a knee replacement in 2002. After her knee replacement, Plaintiff was restricted in how much she could lift and bend, how much time she could stay on her feet, and was ordered not to push or pull laundry carts.[4]

After her knee replacement, Plaintiff's typical day included folding clothes and linens and loading and unloading washers and dryers. (Doc. # 18-4, at 7.) Her co-employees never asked her to collect clothes in the laundry carts to bring them down to the laundry room "because they knew [she] couldn't" push or pull the carts. (Doc. # 18-4, at 8.) Plaintiff's supervisor at Wesley Place was apparently willing to allow her to work within those limitations. (Doc. # 18-4, at 7.)

Plaintiff's inability to perform laundry collection was thus not a problem until Defendant decided to change its operating model. Prior to June 2017, Defendant was operating Wesley Place under what is known as the "Healthcare Model." Under the Healthcare Model, care is delivered in hospital-style settings. Employees are

---

[3] Defendant does business under the name "Methodist Homes of Alabama and Northwest Florida," (Doc. # 18-1, at 2), which is presumably why Plaintiff styled her complaint with that name.

[4] The record is not completely clear on the nature of Plaintiff's medical restrictions. The only medical document in the record, a note from Plaintiff's treating physician, says that Plaintiff may not push or pull carts or stand more than four hours per eight-hour shift. (Doc. # 18-12, at 15.) Elsewhere, however, Plaintiff says she could not lift anything over twenty pounds, (Doc. # 18-4, at 7), or stoop or squat (Doc. # 18-4, at 10).

4

specialized and do not typically perform duties outside their area of specialization. (*See* Doc. # 18-1, at 3.) "For example, housekeeping associates perform all housekeeping duties; maintenance performs all maintenance duties; [and] nurse aids perform basic personal care functions and assist residents with activities of daily living." (Doc. # 18-1, at 3.)

Defendant's new model, called the "Household Model," apparently required employees to have more comprehensive roles than under the old model. Under the Household Model, ancillary functions such as housekeeping, laundry, and food service "are moved into the nursing units that are the residents' home." (Doc. # 18-1, at 3.) Decentralizing these functions decreases staffing needs, "and those employees who remain in the departments must be able to perform all the essential functions of their jobs, with or without accommodation." (Doc. # 18-1, at 3.) New Executive Director Patrick Davies was tasked with transitioning Wesley Place from the Healthcare to the Household Model. To that end, he reviewed the operations of each department and the job descriptions of the employees who worked in those departments. (Doc. # 18-1, at 3–4.)

As part of this review, Davies met with each laundry employee individually, including Plaintiff, to have them review and re-sign their job description "certifying that they could perform the essential functions of their job." (Doc. # 18-1.) The job description Plaintiff was asked to sign included a section on "physical and sensory

requirements (*with or without the aid of mechanical devices*)" that included "[w]alking, reaching, bending, lifting, grasping, fine hand coordination, [and] pushing and pulling." (Doc. # 18-7, at 2 (emphasis added).) Plaintiff admitted that pushing and pulling carts was typically part of the duties of a laundry worker. (Doc. # 18-4, at 12.)

Plaintiff informed Davies that based on her knee injury, she could not push or pull the laundry carts. (Doc. # 18-1, at 4.) She also told Davies that she could not stay on her feet for more than four hours in an eight-hour period, but she had been disregarding her doctor's orders and doing it anyway. (Doc. # 18-6; Doc. # 18-4, at 15.) Davies told her she should not disregard her doctor's orders, (Doc. # 18-1, at 4), but should instead come up with another accommodation that was reasonable and would allow her to perform all the required functions of her job. He also said that if Plaintiff could not come up with such an accommodation, she would be discharged. (Doc. # 18-4, at 11.)

Plaintiff came back to Davies with an option: If Defendant provided Plaintiff with an electric cart, she would be able to collect and deliver laundry. (Doc. # 18-9.) However, she had no suggestions as to how Defendant could accommodate her restrictions on being on her feet, lifting, or stooping or squatting. (Doc. # 18-1, at 5.) Plaintiff said she would continue to disregard her doctor's orders as to those

restrictions, which Davies said he would not allow. (Doc. # 18-1, at 5.) Davies said he needed some time to think about it and he would get back to her. (Doc. # 18-9.)

Davies came back to Plaintiff with bad news. He said that providing an electric cart would not be reasonable, and, in any event, would not resolve the other physical limitations hindering Plaintiff's ability to do the job of laundry worker. (Doc. # 18-1, at 5; Doc. # 18-10, at 2; Doc. # 18-4, at 15–16.) Davies asked if Plaintiff had any other suggestions as to how Defendant could accommodate her disability, and she said no. (Doc. # 18-1, at 5; Doc. # 18-10, at 2; Doc. # 18-4, at 15–16.) Davies then informed Plaintiff she was being terminated.

Plaintiff applied for Social Security Disability benefits in the weeks following her termination. The Social Security Administration found that Plaintiff was disabled as of July 1, 2017, three days before she was officially terminated from Wesley Place.[5] (Doc. # 17-13, at 1; Doc. # 17-4, at 18.)

---

[5] "[A] plaintiff's sworn assertion in an application for disability benefits that she is, for example, 'unable to work' will appear to negate an essential element of her ADA case—at least if she does not offer a sufficient explanation." *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 806 (1999). Plaintiff's application for SSDI is not part of the record. Plaintiff represents that she did *not* tell the SSA she was totally unable to work, but that she was looking for work and had been fired because of her disability. (Doc. # 18-4, at 18.) It is unclear how, if her representation is accurate, Plaintiff would have been awarded disability benefits under current law. *See* 42 U.S.C. § 423(d)(1)(A) (defining disability as "inability to engage in *any* substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months" (emphasis added)). But all the court has to go on is Plaintiff's statement, so it will not consider the SSA's finding of disability as a barrier to Plaintiff's ADA and Rehabilitation Act claims.

7

After exhausting her administrative remedies, Plaintiff filed this lawsuit. She alleges that Defendant denied her a reasonable accommodation by failing to provide the electric cart she requested and fired her in retaliation for that request, in violation of the ADA and the Rehabilitation Act.

## IV. DISCUSSION

### A. Because Plaintiff would not be able to perform all the essential functions of the laundry worker job even with an electric cart, Defendant is entitled to summary judgment.

Because the Rehabilitation Act and the ADA share the same standards for liability, the analysis for the two types of claims is the same, and the court will discuss them together. *Cash v. Smith*, 231 F.3d 1301, 1305 (11th Cir. 2000).

Under the ADA, an employer may not discriminate against "a qualified individual with a disability because of the disability." 42 U.S.C. § 12112(a). To establish a *prima facie* case of discrimination under the ADA, Plaintiff must show that "(1) [s]he is disabled; (2) [s]he was a qualified individual at the relevant time, meaning [s]he could perform the essential functions of [the job of laundry worker] with or without reasonable accommodations; and (3) [s]he was discriminated against because of [her] disability." *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1255 (11th Cir. 2001) (citing *Reed v. Heil Co.*, 206 F.3d 1055, 1061 (11th Cir. 2000)).

The parties do not dispute that Plaintiff was disabled. They do not dispute that Plaintiff needed an accommodation to be able to push and pull laundry carts,

and that pushing and pulling carts was an essential function of the laundry worker job. They also do not dispute that an electric cart was the only accommodation Plaintiff identified. Finally, the parties do not dispute that Plaintiff had restrictions on stooping, squatting, lifting, and the length of time she could be on her feet. Defendant argues that because Plaintiff never identified an accommodation for *those* physical restrictions — that is, the ones other than pushing and pulling the carts — it is entitled to summary judgment.

The first question is whether the other physical activities listed in the job description — "[w]alking, reaching, bending, [and] lifting" (Doc. # 18-7, at 2) — are essential functions of the job of laundry worker.[6] And, if they are essential, whether Plaintiff identified a reasonable accommodation that would allow her to perform them. Only then is Plaintiff considered a qualified individual entitled to ADA protection. *See* 42 U.S.C. § 12111(8).

*1. Stooping, squatting, and lifting are essential functions of the laundry worker job, but Plaintiff apparently could do them even with her restrictions.*

"The term essential functions means the fundamental job duties of the employment position the individual with a disability holds or desires." 29 C.F.R. § 1630.2(n)(1). The term "does not include the marginal functions of the position."

---

[6] Defendant skips this crucial step in the analysis, assuming these functions are essential because they were in the written job description Plaintiff received. The court will not do the same. As explained below, the employer's written job description is certainly relevant to the question whether a function is essential, but it is not the end of the story.

9

*Id.* What counts as an essential function "is evaluated on a case-by-case basis by examining a number of factors." *Davis v. Fla. Power & Light Co.*, 205 F.3d 1301, 1305 (11th Cir. 2000). The function may be essential "because the reason the position exists is to perform that function," 29 C.F.R. § 1630.2(n)(2)(i), or "because of the limited number of employees available among whom the performance of that job function can be distributed," *id.* § 1630.2(n)(2)(ii). Evidence of whether a particular function is essential may include the employer's judgment as to what is essential, written job descriptions, the amount of time spent on performing the function, the consequences of not requiring the employee to perform the function, the work experience of past employees in the job, and the current work experience of employees in similar jobs. *Id.* § 1630.2(n)(3).

The undisputed evidence in the record shows that stooping, squatting, and lifting are essential functions of the laundry worker job — loading and unloading laundry into washers and dryers. And Plaintiff does not question that.

But there is no evidence that Plaintiff's day-to-day stooping, squatting, and lifting ran afoul of any *specific* restrictions her doctors placed on her. The only restrictions in Dr. Bret Simpson's July 14, 2016 report (Doc. # 18-12, at 15), made after Dr. Simpson treated Plaintiff, prohibit her from pushing or pulling carts or staying on her feet more than four hours per eight-hour shift. Plaintiff elsewhere mentions she could not lift more than twenty pounds or "do a lot of stooping and

squatting."[7] (Doc. # 18-4, at 7.) It is unclear *how much* stooping and squatting constitutes "a lot." For example, Plaintiff never indicated that she was stooping or squatting more than a certain number of times in a day, contrary to her doctor's orders. She also never indicated that she was regularly lifting more than twenty pounds.

Defendant glosses over these gaps in the record. Davies's affidavit states that, when asked how Defendant could accommodate her restrictions, Plaintiff said she would "continue to disregard her physician's orders" with respect to her duties which required stooping, squatting, and lifting (Doc. # 18-1, at 5). But taking the evidence in the light most favorable to Plaintiff, there is no indication that Plaintiff was violating any *specific* stooping, squatting, or lifting restrictions. For that reason, the court is reluctant to consider Plaintiff's failure to identify a reasonable accommodation as to her stooping, squatting, and lifting restrictions as a ground for summary judgment.

But Defendant does raise a better reason for summary judgment. There is clear evidence that Plaintiff violated Dr. Simpson's four-hours-standing restriction. In Plaintiff's deposition, she admitted that she was on her feet for more than four hours during an eight-hour shift, in violation of Dr. Simpson's orders. (Doc. # 18-

---

[7] Plaintiff said in her deposition that she "could bend over but not stoop and squat." (Doc. # 18-4, at 10.) Based on how these terms are commonly used, the difference between bending and stooping is not apparent.

11

4) (explaining that she was "not supposed to walk or stand over four hours in an eight-hour period" but "was doing it to get the job done").

Of course, to the extent stooping, squatting, and lifting require one to be on one's feet, those activities do run afoul of Dr. Simpson's orders if done for more than four hours in an eight-hour shift. But, in view of the paucity of the record, it is advisable to examine the clearer route to summary judgment where one exists. Because there is clear evidence that Plaintiff was disregarding a specific medical instruction that she not be on her feet for more than four hours in an eight-hour shift and would have to continue to do so to keep her job, the court will analyze that evidence in deciding whether Defendant is entitled to summary judgment.

### 2. *Standing and walking for extended periods are essential functions of the laundry worker job, and Plaintiff did not suggest a way to accommodate her restrictions.*

Plaintiff admitted in her deposition that she was not supposed to stand for more than four hours in an eight-hour period, but she was doing so against her doctor's orders just to get the job done. (Doc. # 18-4, at 15.) Given that Plaintiff had to go against her physician's instructions just to do her job, it is readily apparent that standing and walking are essential to the laundry worker job. Moreover, walking was listed in the description of the job's physical requirements that was presented to Plaintiff, and it is common sense that loading and unloading washers and dryers require a person to be on his or her feet.

But where Plaintiff's case goes awry is her failure to offer *any* accommodation that would allow her to do the job while abiding by the four-hours-standing restriction. "An accommodation can qualify as 'reasonable,' and thus be required by the ADA, only if it enables the employee to perform the essential functions of the job." *Lucas*, 257 F.3d at 1255 (citing *LaChance v. Duffy's Draft House, Inc.*, 146 F.3d 832, 835 (11th Cir. 1998)). An employer's "duty to provide a reasonable accommodation is not triggered unless a specific demand for an accommodation has been made." *Frazier-White v. Gee*, 818 F.3d 1249, 1255–56 (11th Cir. 2016). Plaintiff "bears the burden of identifying an accommodation, and of demonstrating that the accommodation allows [her] to perform the job's essential functions." *Lucas*, 257 F.3d at 1255 (citations omitted).

Plaintiff never triggered Defendant's duty to provide a reasonable accommodation. The undisputed evidence shows that Plaintiff identified *no* accommodation — such as working a shorter shift, being given a chair to use while she folds laundry, or anything else — that would allow her to do the laundry worker job with the four-hours-standing restriction.

And Plaintiff's apparent suggestion that she be allowed to continue to violate her medical restrictions to do the job, (Doc. # 18-1, at 5; Doc. # 21, at 2–3), is not realistic. "The ADA does not require an employer to permit an employee to perform a job function that the employee's physician has forbidden." *Alexander v. Northland*

13

*Inn*, 321 F.3d 723, 727 (8th Cir. 2003). To require Defendant to ignore Plaintiff's restrictions "would trap employers between the Scylla of liability for following medical advice and the Charybdis of different liability for ignoring the same." *McQueen v. Airtran Airways, Inc.*, No. 3:04-CV-00180-RS-EMT, 2005 WL 3591100, at *4 (N.D. Fla. Dec. 30, 2005) (quotation omitted).

Because she identified no accommodation that would allow her to perform an essential function of her job, Plaintiff was not a qualified individual under the ADA or the Rehabilitation Act.[8] Defendant is thus entitled to summary judgment on Plaintiff's failure-to-accommodate claims.

## B. Plaintiff has identified no evidence her termination was motivated by retaliation.

The ADA and the Rehabilitation Act share the same anti-retaliation provision; therefore, the court uses same analysis for both. *See Albra v. City of Fort Lauderdale*, 232 F. App'x 885, 891 (11th Cir. 2007).

Plaintiff claims that Defendant retaliated by firing her after she requested an electric cart as an accommodation for her disability. "To prevail on her ADA retaliation claim, Plaintiff must show that: (1) she engaged in statutorily protected

---

[8] And because Plaintiff identified no accommodation that would allow her to perform all essential functions of her job, the court need not evaluate whether Defendant's refusal to provide Plaintiff with an electric cart presents a jury question on Plaintiff's failure-to-accommodate claims.

expression, (2) she suffered an adverse employment action, and (3) there was a causal link between the two." *Frazier-White*, 818 F.3d at 1258.

Beyond the temporal proximity between Plaintiff's request for accommodation and her termination, Plaintiff has identified no evidence that could lead a reasonable fact-finder to conclude that there was a causal link between the two events. The only evidence is that Wesley Place was already cutting staff, (Doc. # 18-1, at 3), and that Plaintiff was warned *before she even requested an accommodation* that she would be terminated if she could not do everything in the written job description. (Doc. # 18-6; Doc. # 18-4, at 11.) Moreover, Plaintiff brought up the electric cart *at Davies's request* that she identify an accommodation. If Defendant looked upon ADA accommodations unfavorably, one would not have expected Davies to give Plaintiff several opportunities to request one. Because there is no evidence of a causal link between Plaintiff's request and her firing, Defendant is entitled to summary judgment on Plaintiff's retaliation claims.

## V. CONCLUSION

By all accounts, Defendant was willing to work around Plaintiff's physical limitations by waiving her laundry-collection duties, that is, until a new management regime decided to enforce what had always been part of the job description. Although unfortunate for Plaintiff, the ADA and the Rehabilitation Act do not impose liability on Defendant in this situation: "While it is true that the ADA may

15

require an employer to restructure a particular job by altering or eliminating some of its marginal functions, employers are not required to transform the position into another one by eliminating functions that are essential to the nature of the job as it exists." *Lucas*, 257 F.3d at 1256. For this and the reasons above, Defendant is entitled to summary judgment on all claims.

A separate final judgment will be entered.

DONE this 29th day of March, 2019.

/s/ W. Keith Watkins
UNITED STATES DISTRICT JUDGE